Johnson, J.
Samuel C. Hickman held a policy of accident insurance in the defendant insurance company in the sum of $600. His wife, the plaintiff in error, was the beneficiary named in the policy. Hickman was killed at a place known as Luna Park Motordrome in Cleveland. The motordrome was a racing track where motorcycle races were given for public entertainment. The track was constructed somewhat upon the shape of a saucer. The company conceded that Hickman’s death was due to external, violent and accidental means, within the terms of the policy, and conceded its liability on the policjr, but sought to limit the recovery to $120, being one-fifth of the face of the policy, by reason of the following provision which it contained: “In event of injury, fatal or otherwise, * * * due wholly or in part, directly or indirectly, to disease or bodily infirmity * * * or from ex *89 posure to obvious risk of injury or obvious danger * * * the limit of the company’s liability shall be one-fifth of the amount which would otherwise be payable under this policy.”
In its answer in the municipal court, in which the case originated, the defendant alleged that Hickman “sustained such injuries by suffering himself to exposure to obvious risk of injury or obvious danger,” and that, therefore, defendant’s liability should be but one-fifth of the amount which would otherwise be payable under the contract of insurance.
The reply of Mrs. Hickman denied that her husband exposed himself to obvious risk of injury or to obvious danger.
The cause was tried to a jury in the trial court, in which there was a verdict and judgment for the full amount of the policy with interest. This judgment was affirmed by the court of common pleas. The court of appeals reversed the judgments below, and proceeding to render the judgment which it held the municipal court should have rendered, entered final judgment for the sum of $120, with interest, in favor of Mrs. Hickman, who prosecutes this proceeding to reverse the judgment of the court of appeals and affirm that of the common pleas.
The evidence showed that Hickman and his wife, whom he'had recently married, went to the park to witness the races on the evening of the tragedy. Inside of the track, which was about a quarter of a mile in circumference, there is what is known as the “pit,” to which automobiles and *90 other vehicles were admitted and were backed up to a rope enclosing the track. Outside of the roped enclosure was a space of level ground about fifteen feet in width, ending at its outer edge in a groove or curve, from which the track rose in the shape of a saucer to a height of twelve or fifteen feet, and above this track were seats for spectators. Hickman and his wife went into these seats, where they were seen by one Sweitzer, the driver of an ambulance which was in the “pit.” Sweitzer called to them to come down and sit in the ambulance, which they did. Sweitzer. explained to Mr. Hickman that he was alone that evening and wanted Hickman to give him a lift in case of accident. While these men were seated in the rear of the ambulance, facing the track, the race was called, and some four or five riders started their machines around the track. As these riders were circling the course at high speed, one of them, Grimes, as he was passing the part of the track almost in front of Sweitzer and Hickman, fell from his machine. The man and the machine came rolling down the incline into the level part of the track. There was a starter, who, by means of certain lights which had been provided near the starting stand to be used as signals, had signaled that riders should come off the track because one of them had failed to get his machine ready. The lights were some distance from where Hickman was located, and the plaintiff in error claims that the evidence shows that they were not seen by him or his associate. She also claims that neither Hickman nor Sweitzer knew that .the *91 riders had been called off the track, but supposed that the race was going forward. When the mishap occurred to Grimes and his machine there was great excitement. The people in the audience rose to their feet. Sweitzer called to Hickman, and together they rushed to the aid of the fallen man. They reached him about the time that he arrived at the bottom of the track. Sweitzer says they reached him before he was able to get up. The rider, Grimes, thinks that he was on his feet before they reached him, but they got to him almost instantly. As Sweitzer and Hickman reached the place where Grimes and his machine lay, and were attempting to get him and his machine away from the track, another rider, who, in obedience to the signal to come off the track, had come down the groove and was going at a rapid rate of speed, struck Hickman and instantly killed him. There was no substantial dispute between the witnesses as to this state of facts.
The trial court charged the jury that if the deceased went on the track in order to save life the law would not impute carelessness to him, or to any one who attempts to save life, unless the attempt was made under such circumstances as to constitute rashness in the estimation of prudent persons, and that the question for the jury to determine was, Was it rash?
The court further charged that if, under the circumstances, a prudent man would obey the impulse to save life, the exposure is not voluntary.
It is conceded by counsel that a proviso in a policy, which exempts the insurer from liability *92 for injury resulting from “voluntary exposure to unnecessary danger,” does not apply where one under the impulse of the moment rushes to a place of danger in an effort to save life, unless the act is so rash that a prudent man would not take the risk.
In U. S. Mutual Accident Assn. v. Hubbell, 56 Ohio St., 516, it was held that the term “voluntary exposure to unnecessary danger” in an accident policy does not embrace every exposure of the assured that might have been avoided by the exercise of due care on his part. ' It relates to dangers of a substantial character of which the assured at the time had knowledge,. and to which he purposely and consciously exposed himself, intending at the time to assume all risk.
The phrase quoted in that case is omitted from the policy involved in this case, and the clause “exposure to obvious risk of injury or obvious danger” is substituted. There is here no qualification of the word “exposure” by the use of the word “voluntary,” and instead of “unnecessary danger” “obvious danger” is provided as an exception. The omission of the word “voluntary” in the new policy is not conclusive, however, because an exposure to obvious risk necessarily implies that the risk must be obvious to the person exposing himself, to-wit, the insured, at the time he exposes himself. On the other hand it would seem to be clear that by the substitution of the word “obvious” for the word “unnecessary,” a different meaning was intended to be given to the exception included in the policy. “Unnecessary” has been defined “not required by the circumstances of the case.” “Ob *93 vious” has been defined “easily discovered, seen or understood, plain, manifest, evident, palpable.” It was doubtless recognized that danger encountered in the effort to save life might reasonably be, and had by the courts been decided to be, involuntary and necessary, and, therefore, covered by the policy. This view is confirmed by the fact that in the new form it is provided that where the danger was obvious and injury occurred, the liability was not avoided entirely, but was cut down to one-fifth of the face of the policy.
We think it apparent that this form was adopted to meet the situation with which the companies were confronted by the construction which the courts had put upon policies as formerly worded. Therefore, the court of appeals correctly held that the trial court erred in charging the jury as above stated.
Having practically concluded that if the decedent had exposed himself to a risk which was obvious, the liability of the company was limited to one-fifth of the face of the policy, the court of appeals reversed the judgments of the courts below and entered judgment in favor of Mrs. Hickman for that amount. In entering final judgment we think there was error. That course was taken because the court concluded that there was no dispute as to the facts.
There was a direct issue in the pleadings as to whether the deceased met his death by reason of exposure to obvious risk of injury or obvious danger. It is true that there was no material difference or conflict in the statements of the different *94 witnesses as to the occurrence. Each of the witnesses related the circumstances as he saw them, and each stated some detail not referred to by any of the other witnesses.
If the things which Hickman did under the circumstances constitute as an ultimate fact the exposure of himself to obvious danger, then the exception stated in the policy applied. But there was a dispute between the parties as to-the conclusion of fact to be drawn from the different circumstances related by the witnesses. Defendant in error claims that these circumstances show the obvious danger referred to. Plaintiff in error claims that there was in the situation no element or fact known to Hickman, or which he should have known, that would have caused him to anticipate that any of the other machines were likely to come along on the level part of the track, upon which he was when attempting to rescue the fallen man, and further, that as Hickman must have seen the situation the riders were upon the inclined portion of the track and would in all probability have continued there until the race was ended.
Sweitzer testified that he did. not know when he started on the track that a signal had been given to the riders to come down off the track, and Mrs. Hickman testified, in answer to the question whether there were any men riding on the flat part at the time, that they were all up on the top of the track. Grimes testified that the flat part was ten or twelve feet wide, and that while the racing was going on it was not very dangerous “for people to be on the-flat part.”
*95 In order that an issue should be required to be submitted to the jury it is not essential that there be such a conflict in the testimony of different witnesses as makes it necessary for the jury to determine disputes or questions of veracity. That is not the only province of the jury. They have another important function and duty. Where there is no dispute or conflict in the testimony of different witnesses, but nevertheless the unconflicting testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate fact shown by such evidence, then it is the duty of the jury to determine such ultimate fact, even though the trial judge should himself be convinced as to what the conclusion should be. Of course, when the ultimate fact is undisputed there is presented simply a question of law. These principles are well fixed. Ellis & Morton v. The Ohio Life Ins. & Trust Co., 4 Ohio St., 628; Cincinnati Street Ry. Co. v. Snell, 54 Ohio St., 197; Darling v. Younker, 37 Ohio St., 487, 494.
In this case the question whether Hickman exposed himself to obvious risk or obvious danger was one of fact, to be determined by the jury in the light of all the circumstances shown by the testimony.
The judgment of the court of appeals in so far as it reversed the judgments of the courts below will be affirmed, and in so far as it finally determined the case will be reversed and the cause *96 remanded for further proceedings according to law. '

Judgment reversed.

Nichols, C. J., Donahue, Wanamaker and Matthias, JJ., concur.